IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN BUILDERS & CONTRACTORS SUPPLY CO., INC. d/b/a ABC SUPPLY CO., INC., | No. 4:24-CV-00950 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| STELLA MANAGEMENT SYSTEMS, INC. d/b/a STELLA MANAGEMENT SYSTEMS, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

**MARCH 26, 2026**

## I.    BACKGROUND

On May 2, 2024, Plaintiff, American Builders & Contractors Supply Co., Inc. ("ABC") filed a six-count complaint in the Court of Common Pleas of Centre County, Pennsylvania.[1] This complaint was brought against Defendants Stella Management Systems, Inc. ("SMS") and Julia Shvenke ("Ms. Shvenke"), and it included counts for breach of contract, unjust enrichment, account stated, action on price, violation of the Contractor and Subcontractor Prompt Payment Act, and breach of personal guaranty.[2] This case was removed to federal court on June 10,

---

[1]    Doc. 1, Ex. 1 (original state court complaint).

[2]    *Id.*

2024.[3] On September 9, 2024, this Court granted leave for SMS and Ms. Shvenke to file a Joinder Complaint.[4] That complaint was filed days later, named four third-party corporate defendants, and brought three breach of contract claims and three unjust enrichment claims against those third-party defendants.[5]

After the close of discovery, Plaintiffs filled a motion for summary judgment against SMS and Ms. Shvenke.[6] That motion is now ripe for disposition; for the reasons below, it is granted in part and denied in part.

## II.    LIABILITY

ABC moved for summary judgment on five of the six counts in the initial complaint—with the only exception being the claim under the Contractor and Subcontractor Prompt Payment Act.[7] However, for two of those counts, the breach of contract and breach of guaranty claims, the Defendants are not "challeng[ing] ABC's request for summary judgment."[8] Additionally, ABC has also made a concession, as they have said that for the purposes of this motion, "ABC withdraws its request to seek judgment on … Counts II, III, and IV."[9]

---

3   Doc. 1.
4   Doc. 14.
5   *See* Doc. 15.
6   Doc. 47.
7   Doc. 47.
8   Doc. 54, at 1-2.
9   Doc. 57, at 6. It is noted that ABC has only waived these counts for the purposes of this motion, and they have with withheld the ability to re-raise these counts—that do remain in the complaint—if the case does proceed to trial. *See id.* Given this stance, the Court views the Plaintiff as only having withdrawn its arguments on these counts set forth in its summary judgment motion.

Given that "SMS concedes liability … under counts one (breach of contract) and six (breach of personal guaranty)" and Plaintiff has withdrawn it's motion for summary judgment as to counts two, three, and four,[10] resolving the motion for summary judgment as to liability becomes simple. Summary judgment will be granted as to counts one and six on the issue of liability.

## III.    DAMAGES

While the Court has determined that granting summary judgment as to liability on counts one and six is appropriate, this was entirely because of the agreement of the parties. Determining whether summary judgment is warranted on the issue of damages is an entirely separate issue.[11] And here, the parties do not agree. Therefore, I will now conduct an analysis of whether summary judgment is warranted on the issue of damages.

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence

---

[10]  *See* Doc. 54, at 2; Doc. 57, at 6.
[11]  *See* 10B Wright & Miller's Federal Practice and Procedure § 2736 (4th ed. 2016) ("when there is a genuine issue as to damages but not as to the ultimate liability of the nonvoting party, an interlocutory summary judgment is appropriate.").
[12]  Fed. R. Civ. P. 56(a).

exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[13] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[14] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[15]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[16] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[17] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[18] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[19]

---

[13]  *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).

[14]  *Clark v. Mod. Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993).

[15]  *Id.*

[16]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

[17]  *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

[18]  Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

[19]  Fed. R. Civ. P. 56(c)(3).

### B.    Undisputed Facts

ABC supplies roofing, siding, windows, and other select exterior and interior building products that are commonly used in the construction industry.[20] SMS is a company that generally operates on construction projects for the exterior facades of buildings.[21] Ms. Shvenke serves as the President of SMS.[22] To further SMS's construction business, "[o]n or about January 7, 2019, [SMS] opened a credit account with ABC by submitting an executed credit application . . . ."[23] This application was signed and executed by Ms. Shvenke on behalf of SMS.[24] As part of the agreement, Ms. Shvenke also agreed to personally guarantee "[SMS]'s debt to ABC."[25] Pertinent to this analysis, the application also included sections requiring SMS "to pay monthly late payment charges at the rate of one and a half percent (1.5%) per month on any amounts extended by the Plaintiff as credit and that were not paid in a timely manner,"[26] and requiring SMS "to pay the Plaintiff's costs of collection, including attorneys' fees and costs incurred by the Plaintiff."[27]

---

[20]    Doc. 49 (Pl.'s Statement of Material Facts) at ¶ 1; Doc. 55 (SMS and Ms. Shvenke's Answer to Pl.'s Statement of Material Facts) at ¶ 1.
[21]    Doc. 49 ¶ 2; Doc. 55 ¶ 2.
[22]    Doc. 49 ¶ 3; Doc. 55 ¶ 3.
[23]    Doc. 49 ¶ 4; Doc. 55 ¶ 4.
[24]    Doc. 49 ¶ 5; Doc. 55 ¶ 5.
[25]    Doc. 49 ¶ 11; Doc. 55 ¶ 11.
[26]    Doc. 49 ¶ 7; Doc. 55 ¶ 7.
[27]    Doc. 49 ¶ 8; Doc. 55 ¶ 8.

After the agreement was executed, ABC began to sell and provide SMS with goods and materials that SMS ordered to use in its construction projects.[28] After each sale of materials ordered by SMS, ABC issued an invoice to SMS that listed the amount due for that specific sale, but not for the total amount of unpaid debt.[29] As of February 29, 2024, it is undisputed that SMS owed a total of $188,651.09 to ABC—with $183,326.78 as the principal amount owed for goods sold and $5,324.31 owed for late payment charges.[30]

## C.    Analysis

What ultimately remains in dispute in this case is the amount of late payment charges due from March 1, 2024 through the date that final judgment is entered in this case.[31] ABC alleges, in altogether conclusory fashion, that the amount of late fees owed for the time period between March 1, 2024 and September 18, 2025 — the date this summary judgment motion was filed — is in the amount of $51,358.56.[32] SMS and Ms. Shvenke acknowledge that they are liable for some amount of late fees, but they say that they "cannot determine, after great effort, how [this] late fees figure … was derived."[33]

---

[28]    Doc. 49 ¶ 12; Doc. 55 ¶ 12.
[29]    *See* Doc. 50, Ex. 3 (collection of SMS invoices from ABC); Doc. 48 ¶ 14; Doc. 55 ¶ 14.
[30]    Doc. 49 ¶ 19; Doc. 55 ¶ 19.
[31]    *See TFB Midatlantic 4 LLC v. Loc. Car Wash, Inc.*, No. 1:21-CV-299, 2024 WL 3891097, at *6 (M.D. Pa. Aug. 21, 2024) ("the defendants are entitled only to the late payments calculated up until the date of the court's accompanying judgment") *Aerotek, Inc. v. A. S. T. Constr., Inc.*, No. CV 25-11836, 2025 WL 2826100, at *4 (D.N.J. Oct. 6, 2025).
[32]    Doc. 48, at 15.
[33]    Doc. 54, at 7.

In ABC's reply brief, they attempt to explain in more detail how they calculated that figure.[34] They even state that "the amount of the late payment charge is strictly an issue of math."[35] Despite this assertion, the Court has struggled to re-calculate the numbers proffered in the Plaintiff's reply brief. In some cases the calculations seem off by mere decimals, but in others there is a difference of thousands of dollars.

As a result of the Court's difficulty in following the mathematical logic of the Plaintiff's alleged amount of late fees due after February 24, 2025, the Court is unable to ascertain to a reasonable certain the amount of late fees currently owed. Therefore, summary judgment will be denied as to the issue of damages.[36]

However, the Court agrees with the Plaintiffs that there is no factual dispute as to the issue of damages.[37] This means that a trial on the issue of damages does not appear necessary and the Court can eventually decide the issue on a summary judgment motion. Therefore, the Court will set a simultaneous briefing schedule to address the sole issue of damages in the Order that accompanies this opinion.[38] In that briefing, both parties should address the following:

---

[34]   *See* Doc. 57, at 6-8.

[35]   *Id.* at 6.

[36]   *See Bricklayers & Allied Craftworkers Loc. 1 of Pa/De v. ARB Constr., Inc.*, No. CV 13-3883, 2016 WL 1161528, at *8 (E.D. Pa. Mar. 23, 2016) (similarly denying summary judgment on the issue of damages when they could not be ascertained).

[37]   *See* Doc. 57, at 6.

[38]   Since the computation of late fees after February 29, 2024 was only set forth in the reply brief to this summary judgment motion, this additional briefing will have the added benefit of allowing the Defendants a first chance to respond to Plaintiff's calculations. Plaintiffs appear

1.   What amount of late payment fees are owed for the period after February 29, 2024? This should include an explicit description of how that amount was calculated[39]

2.   How the existence of mechanic's liens and past/future payments to ABC on the Defendant's behalf should be considered in the Court's damages calculations?

3.   Should the Court award attorney's fees in this case, and if so, in what amount?

4.   What is the total amount of damages that should be awarded in this case?[40]

5.   *For Plaintiff*: After summary judgment is granted on the issue of damages for Counts I and VI, what remains of this case? That is, will Plaintiffs voluntarily dismiss the remaining counts of the complaint, or would it wish to advance to trial on those claims.[41]

---

willing to allow such additional briefing for a reply. *See* Doc. 57, at 9. The Court is simply providing that reply chance to both parties now that the only issue before the Court is the calculation of damages.

[39]  The Court acknowledges that this issue was the attempted subject of a number of pages of Plaintiff's reply brief. *See* Doc. 57, at 6-9. However, the Court urges the Plaintiff to start anew and recalculate the amount of late fees it believes to be owed. Additionally, both parties are encouraged to be explicit in their explanation of calculations. That is, the parties should explain each step they took to reach their final late fees amount and why each step was taken.

[40]  The parties are encouraged to keep in mind that the principal amount owed and late fees owed through February 29, 2024 are not in dispute. *See* Doc. 49 ¶ 19; Doc. 55 ¶ 19.

[41]  When answering this question, Plaintiff should bear in mind that it is well-settled law that a "party is not permitted to recover twice under multiple theories of law for the same injury." *Meyer-Chatfield v. Century Bus. Servicing, Inc.*, 732 F. Supp. 2d 514, 523 (E.D. Pa. 2010) (citing *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1102 (3d Cir.1995)).

After this briefing is received on this issue, the Court believes that it will have the necessary materials before it to make a determination on the issue of damages. The parties should be on notice that once these briefs are submitted, the Court will *sua sponte* review whether summary judgment is appropriate on the issue of damages. If either party opposes this plan or desires to have an evidentiary hearing, they should raise such arguments in the briefing ordered on this damages issue.[42]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted on the issue of liability but denied as to damages.

An appropriate Order follows that will also set in the above referenced briefing schedule in advance of a *sua sponte* summary judgment review on the issue of damages.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[42] This opinion should serve as notice that summary judgment will be granted *sua sponte* following this subsequent briefing. Notice and the opportunity to bring forward opposition are the two requirements that need to be met prior to entry of *sua sponte* summary judgment. *DL Res., Inc. v. FirstEnergy Sols. Corp.*, 506 F.3d 209, 223 (3d Cir. 2007); *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).